Dear Mr. Walker:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Ward Five Fire Protection District of Evangeline Parish ("District"), you have asked for our opinion as to whether the District may assess and collect a service charge for fires and/or emergency calls responded to outside the geographical boundaries of the District without a reciprocal mutual aid agreement for such area.
According to your opinion request, the District is funded by tax revenues and provides fire protection for a portion of the northern part of Evangeline Parish. The District has multiple reciprocal mutual aid agreements with surrounding fire districts and departments. However, there are two (2) separate areas within Evangeline Parish that are neither included in any fire protection district, nor included in any functioning or operational fire protection district/department. Further, there are no mutual aid agreements covering these two (2) unprotected areas.
Specifically, you ask the following questions:
 1. Can the District legally expend tax proceeds by responding to fire and/or emergency calls in the unprotected areas?
 2. Can the District assess and collect a service charge from property owners for calls responded to in the unprotected areas?
 3. If such service charge is allowed, would it act as a lien upon the property by way of tax assessment or collected through an ordinary civil proceeding? *Page 2 
 4. Would such service charges have to be approved and/or adopted by the Evangeline Parish Police Jury?
With respect to your first question, it has consistently been the opinion of this office that the proceeds from a special tax can only be used for the objects and purposes for which the tax was levied. Seegenerally Attorney General Opinion Nos. 07-0207, 07-0154, 05-0159, 05-0168.
 Specifically, we note La.Rev.Stat. 39:704 provides the following:
 § 704. Proceeds of special tax
 The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
Additionally, the jurisprudence of this state provides that special tax authorizations must be strictly construed. Hemler v. Richland ParishSchool Board, 76 So. 585 (La. 1917). In Hemler, at pg. 586, the Supreme Court stated:
 It is a familiar principle that laws authorizing taxation . . . are in derogation of common rights; and therefore are to be strictly construed . . . this is especially true of laws authorizing special taxes.
Therefore, it is the opinion of this office that the District may only expend tax proceeds in accordance with the objects and purposes for which the tax was levied. You have not provided our office with a copy of the tax proposition. Nevertheless, we opine that if the tax proposition was conditioned or limited to a specific geographical area, the District has no authority to use proceeds derived from such proposition outside of said geographical area.
With respect to your remaining questions, Attorney General Opinion No. 05-0122 provides some guidance. There, we were asked by the Rapides Parish Police Jury whether it could renew an agreement it had with the Town of Woodworth in which the Town provided fire protection services for an area of the parish located outside the Town limits, an area for which the Parish was responsible. Prior to the agreement, the Town provided fire protection services free of charge. In our response, we stated the following:
 It is our opinion that the Town may not provide services for the area outside its limits free of charge, regardless of the source of the *Page 3 
public funds. However, if the Town desires to continue providing services in this area, it may do so by entering into a local services agreement with the Parish, provided the Parish bears all costs associated with providing the services. Your request requires the analysis of the La. constitutional prohibition against donating public funds and the statutes regarding the use of proceeds from special taxes.
Thus, in accordance with our prior opinion, the District is under no obligation to provide free fire protection services. Further, as noted above, the District has no authority to expend tax proceeds in contravention of the tax proposition that gave rise to the proceeds. In our view, in order for the District to legally be able to provide fire protection services for those "unprotected areas," the District and Evangeline Parish must execute a local services agreement. As recognized in Attorney General Opinion No. 05-0122, if such an agreement is executed, it must comply with the constitutional mandates of Louisiana Constitution Article VII, Section 14.
Louisiana Constitution Article VII, Section 14(A) contains the general prohibition against the donation of "funds, credit, property, or things of value of the state or of any political subdivision". Generally, political subdivisions are found to have violated this provision if they give up something of value when they do not receive anything in return. The District will be in violation of this provision if it provides free fire protection services in the area outside its limits, regardless of the origin of the funding. These services constitute "things of value" and cannot be given away. However, if the District desires to provide services in the unprotected areas, it may do so by entering into a local services agreement with Evangeline Parish, pursuant to the authority of La.Const. Art. VII, Section 14 and Louisiana's Local Services Law.
Article VII, Section 14(C) of the La.Constitution authorizes the state and its political subdivisions to engage in cooperative endeavor agreements for public purposes. This authorization does not, however, exempt political subdivisions from the prohibition of Section 14(A). It has been the consistent opinion of this office that in order for an expenditure of public funds to be permissible under Louisiana Constitution Article 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. See
La. Atty. Gen. Op. Nos. 09-0271, 09-0259, 09-0251, 09-0146 and 07-0050A. *Page 4 
First, the District must have the legal authority to expend funds. As noted above, the District does not have the authority to expend funds in those areas outside of the District. Evangeline Parish is responsible for the areas in question. However, our Local Services Law addresses situations like this and authorizes political subdivisions to enter into agreements to act jointly when at least one of the parties to the agreement is authorized by law to undertake the activity. Since Evangeline Parish has an obligation or duty to provide fire protection services to the areas in question, the District and Evangeline Parish may agree to act jointly to provide these services.
Second, the agreement must be for a public purpose. Fire protection is commonly understood to be a public purpose, and La.R.S. 33:1324 expressly includes fire protection in its list of public projects for which political entities may agree to act jointly. Finally, the costs expended must be proportionate to the benefit received. The District may not provide these services free of charge or at a nominal or reduced rate. The District must receive compensation proportionate to the cost of providing the services. Moreover, since the District is funded with special tax proceeds, the cost of providing services for an area outside the District limits must be borne completely by Evangeline Parish.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ MICHAEL J. VALLAN Assistant Attorney General
 JDC/MJV/chb